**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | | |
|---|---|---|
| ECIMOS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 2:15-cv-2726-JPM-cgc |
| v. | ) | |
| | ) | |
| CARRIER CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

**JURY INSTRUCTIONS**

## I.       GENERAL INSTRUCTIONS

Ladies and gentlemen of the jury, we have now come to the point in the case when it is my duty to instruct you on the rules of law that you must follow and apply in deciding this case.

As jurors it is your exclusive duty to decide all questions of fact submitted to you and for that purpose to determine the effect and value of the evidence.

You must not be influenced by sympathy, bias, prejudice, or passion.

You must follow the law as I explain it to you whether you agree with it or not.  You are not to single out any particular part of the instructions and ignore the rest, but you are to consider all the instructions as a whole and regard each in the light of all the others.

All of the instructions are equally important.  The order in which these instructions are given has no significance.  You must follow all of the instructions and not single out some and ignore others.

A.  <u>Organization Not to Be Prejudiced</u>

In this case, both the plaintiff and the defendant are business organizations and/or corporations.  The fact that the parties in the case are organizations must not influence you in your deliberations or in your verdict.

You may not discriminate between businesses, including corporations, and natural individuals.  Each is a person in the eyes of the law, and each is entitled to the same fair and impartial consideration and to justice by the same legal standards.

This case should be considered and decided by you as an action between persons of equal standing in the community, of equal worth, and holding the same or similar stations of life.  An organization is entitled to the same fair trial at your hands as a private individual.  All persons, including corporations, governments, and government entities, stand equal before the law, and are to be dealt with as equals in a court of justice.

It is your duty to decide this case with the same impartiality you would use in deciding a case between individuals.

B.  <u>Organizations/Corporations Act Through Their Authorized Employees or Agents</u>

While ECIMOS and Carrier are the parties in this case, that does not mean that only the actions of each business organization as one body are to be considered by you in determining its claims or defenses.  A corporation or business organization acts not only through the policies and decisions it makes, but also through its designated supervisory employees, such as its managers, officers, and others designated by the corporation to act on its behalf.

Pay close attention to the remainder of these instructions.  As you apply subsequent portions of these instructions, you will have to determine whether or not individual employees, managers, or agents were authorized to act on behalf of the party you are considering.

C.  Burden of Proof and Consideration of the Evidence

I will now instruct you with regard to where the law places the burden of making out and supporting the facts necessary to prove the theories in the case.

When a party denies the material allegations of the other party's claims, the law places upon the party bringing a claim the burden of supporting and making out each element of each claim by the greater weight or preponderance of the evidence.

The preponderance of the evidence means that amount of factual information presented to you in this trial which is sufficient to cause you to believe that an allegation is probably true.  In order to preponderate, the evidence must have the greater convincing effect in the formation of your belief.  If the evidence on a particular issue appears to be equally balanced, the party having the burden of proving that issue must fail.

You must consider all the evidence pertaining to every issue, regardless of which party presented it.

D. <u>Credibility and Weighing of Evidence</u>

You, the members of the jury, are judges of the facts concerning the controversy involved in this lawsuit.  In order for you to determine what the true facts are, you are called upon to weigh the testimony of every witness who appears before you and to give the testimony of the witnesses the weight, faith, credit, and value to which you think it is entitled.

You should consider the manner and demeanor of each witness while on the stand.

You must consider whether the witness impressed you as one who was telling the truth or one who was telling a falsehood, and whether or not the witness was a frank witness.  You should consider the reasonableness or unreasonableness of the testimony of the witness; the opportunity or lack of opportunity of the witness to know the facts about which he or she testified; the intelligence or lack of intelligence of the witness; the interest of the witness in the result of the lawsuit, if any; the relationship of the witness to any of the parties to the lawsuit, if any; and whether the witness testified inconsistently while on the witness stand, or if the witness said or did something or failed to say or do something at any other time that is inconsistent with what the witness said while testifying.

These are the rules that should guide you, along with your common judgment, your common experience, and your common observations gained by you in your various walks of life, in weighing the testimony of the witnesses who have appeared before you in this case.

If there is a conflict between the testimony of different witnesses, it is your duty to reconcile that conflict if you can, because the law presumes that every witness has attempted to and has testified to the truth.   But if there is a conflict in the testimony of the witnesses that you are not able to reconcile in accordance with these instructions, then you must determine which of the witnesses you believe have testified to the truth and which ones you believe have testified to a falsehood.

Immaterial discrepancies do not affect a witness's testimony, but material discrepancies do.  In weighing the effect of a discrepancy, always consider whether it pertains to a matter of importance or an unimportant detail, and whether the discrepancy results from innocent error or intentional falsehood.

The preponderance of the evidence in a case is not determined by the number of witnesses testifying to a particular fact or a particular set of facts.  Rather, it depends on the weight, credit, and value of the total evidence on either side of the issue, and of this you jurors are the exclusive judges.

If in your deliberations you come to a point where the evidence is evenly balanced and you are unable to determine which way the scales should turn on a particular issue, then you must find against the party upon whom the burden of proof has been cast in accordance with these instructions.

Remember, you are the sole and exclusive judges of the credibility or believability of the witnesses who testify in this case.

Ultimately, you must decide which witnesses you believe and how important you think their testimony was.  You are not required to accept or reject everything a witness says.  You are free to believe all, none, or part of any person's testimony.

E.   <u>Impeachment – Inconsistent Statements or Conduct</u>

A witness may be discredited or impeached by contradictory evidence or by evidence that at some other time the witness has said or done something, or has failed to say or do something, that is inconsistent with the witness's present testimony.

If you believe that any witness has been impeached and thus discredited, you may give the testimony of that witness such credibility, if any, you think it deserves.

If a witness is shown knowingly to have testified falsely about any material matter, you have a right to distrust such witness's other testimony and you may reject all the testimony of that witness or give it such credibility as you may think it deserves; you may, of course, accept any part you decide is true.  This is all for you, the jury, to decide.

An act or omission is done "knowingly" if committed voluntarily and intentionally, and not because of mistake or accident, or some other innocent reason.

F.  <u>Direct and Circumstantial Evidence</u>

There are two kinds of evidence: direct and circumstantial.  Direct evidence is testimony by a witness about what a witness personally saw, heard, or did.  Circumstantial evidence is indirect evidence—that is, proof of one or more facts from which one can find another fact.

You may consider both direct and circumstantial evidence in deciding this case.  The law permits you to give equal weight to both, but it is for you to decide how much weight to give to any evidence.

G. <u>Evidence</u>

You are to decide this case only from the evidence that was received—that is, evidence that was presented for your consideration during the trial.  The evidence consists of:

1.      The sworn testimony of the witnesses who have testified;

2.      The exhibits that were received and marked as evidence;

3.      Any facts to which the lawyers for both sides have agreed or "stipulated."

H.  "Inferences" Defined

Although you are to consider only the evidence in this case, you are not limited to the statements of the witnesses.  In other words, you are not limited to what you see and hear as the witnesses testify.  You may draw from the facts that you find have been proved such reasonable inferences as seem justified in light of your experience.

Inferences are deductions or conclusions that reason and common sense lead you to make from facts established by the evidence in the case.

I. <u>Statements and Arguments of Counsel</u>

You must not consider as evidence any statements of counsel made during the trial.

If, however, counsel for the parties have stipulated to any fact, or any fact has been admitted by counsel, you will regard that fact as being conclusively established.

As to any questions to which an objection was sustained, you must not speculate as to what the answer might have been or as to the reason for the objection, and you must assume that the answer would be of no value to you in your deliberations.

You must not consider for any purpose any offer of evidence that was rejected, or any evidence that was stricken out by the Court.  Such matter is to be treated as though you had never known it.

You must never speculate to be true any insinuation suggested by a question asked of a witness.  A question is not evidence.  It may be considered only as it supplies meaning to the answer.

J.   <u>Totality of the Evidence</u>

You should consider all of the evidence admitted in the case.  Testimony and documents which the Court allowed into evidence over a hearsay objection may be considered by you as evidence, on the same basis as all other evidence, for the purpose for which it was admitted.  For example, matters and things that a decision maker is told may be considered for the purpose of explaining the basis upon which that person acted or made a decision.  This, of course, is all for you, the jury, to decide.

K.  <u>Limited Admission of Evidence</u>

You will recall that during the course of this trial, certain evidence was admitted for a limited purpose only.  For example, some video evidence was admitted for the limited purpose of providing context about the technology at issue in this case.  You must not consider such evidence for any other purpose.

L.   Carrier's Revenues Not To Be Considered In Determining Liability

As I just explained, when certain evidence is admitted for a limited purpose only, you must not consider that evidence for any other purpose.  You have heard testimony about the amount of revenues and profits that Carrier earned during 2016 and the last quarter of 2015.  That evidence is not relevant to Carrier's liability; it is relevant only to the amount of damages ECIMOS may be able to recover if you find Carrier to be liable under certain claims.  Later in these instructions, I will explain the potential damages that are available for each of the parties' claims.  You will only determine damages for a particular claim if you determine that a party is liable under that claim.

Therefore, you must not consider the amount of Carrier's revenues or profits in determining its liability under ECIMOS's claims.  It is unlawful and unfair to find liability for a party simply because it is a profitable business.  I am instructing you to disregard any evidence of Carrier's revenues and profits when determining its liability under ECIMOS's claims.  That evidence was admitted for the limited purpose of determining damages, and you must not consider it for any other purpose.

M. <u>Juror Notes</u>

If you took notes, please remember that your notes are not evidence.  You should keep your notes to yourself.  They may only be used to help refresh your personal recollection of the evidence in this case.  It is the evidence itself, and not your notes, that you should discuss with the other jurors.

If you cannot recall a particular piece of evidence, you should not be overly influenced by the fact that someone else on the jury appears to have a note regarding that evidence.

Remember, it is your recollection and the collective recollection of all of you upon which you should rely in deciding the facts in the case.

N.  <u>Comments by the Court</u>

During the course of this trial, I occasionally asked questions of a witness in order to bring out facts not then fully covered in the testimony.  Please do not assume that I hold any opinion on the matters to which my questions may have related.  Remember that you, as jurors, are at liberty to disregard all comments of the Court in arriving at your own findings as to the facts.

On the other hand, you are required to follow the Court's instructions on the law, whether you agree with these instructions or not.

O.  <u>Opinion Testimony</u>

You have heard the testimony of James Chenault, William J. Carr, Joshua Siegel, Jeremy Fleming, and Douglas Femec, who rendered opinions in this case.

A witness is allowed to express his or her opinion on those matters about which the witness has special knowledge, training, or experience.  Opinion testimony is presented to you on the theory that someone who is experienced or knowledgeable in a field can assist you in understanding the evidence or in reaching an independent decision on the facts.

In weighing each opinion witness's testimony, you may consider his qualifications, opinions, reasons for testifying, as well as all of the other considerations that ordinarily apply when you are deciding whether or not to believe a witness's testimony.  You may give opinion testimony whatever weight, if any, you find it deserves in light of all the evidence in this case.

You should not, however, accept a witness's testimony merely because he is an opinion witness.  Nor should you substitute it for your own reason, judgment, and common sense.  The determination of the facts in this case rests solely with you.

P.   <u>Deposition & Previous Testimony</u>

Certain testimony has been read into evidence from depositions or previously given testimony.  A deposition is testimony taken under oath in advance of this trial and preserved in writing or on video tape.  Previous testimony is testimony taken under oath in either this or a different legal proceeding.  You are to consider all such testimony as if it had been given in this Court.

While most depositions and previous testimony are simply the testimony of an individual regarding what that individual personally knows, certain witnesses in this case have been designated by organizations to testify on those organizations' behalf about designated topics.  It is not literally possible to take the deposition of an organization; instead, when an organization is involved in a lawsuit, its testimony must be obtained from natural persons it designates to speak on its behalf about the designated topics.  Such testimony is binding on the organization on those designated topics as if the organization had given the testimony itself.

Q.  <u>Demonstrative Charts and Summaries</u>

Certain demonstrative charts and summaries have been shown to you in order to help explain facts disclosed by books, records, and other documents that are in evidence in the case. These demonstrative charts and summaries are not themselves evidence or proof of any facts.  If the demonstrative charts or summaries do not correctly reflect the facts or figures shown by the evidence in the case, you should disregard the charts or summaries.

## II.     STATEMENT OF THE CASE AND STIPULATED FACTS

A.  Statement of the Case

Plaintiff ECIMOS, LLC ("ECIMOS") alleges that Defendant Carrier Corporation ("Carrier"), in order to avoid paying licensing fees to ECIMOS, (1) breached the terms of the parties' software licensing agreement, (2) misappropriated ECIMOS's valuable trade secrets, and (3) infringed upon ECIMOS's copyrights in the development of Carrier's new quality control testing software and database.

Carrier denies ECIMOS's allegations and contends that it hired a third party, Amtec Solutions Group ("Amtec"), to independently develop a new software program and database to replace ECIMOS's obsolete software and database.  Carrier denies that it owes ECIMOS any licensing fees.  Carrier further denies that it copied or misappropriated ECIMOS's software, database, or trade secrets in the development of a new program and database.  Additionally, Carrier alleges that ECIMOS breached the terms of the parties' service contract.

B.  Stipulated Facts

Before the trial of this case, the parties agreed to the truth of certain facts.  As a result of this agreement, ECIMOS and Carrier entered into certain stipulations in which they agreed that the stipulated facts could be taken as true without the parties presenting further proof on the matter.  This procedure is often followed to save time in establishing facts that are undisputed.

Facts stipulated to by the parties in this case include the following:

1.      Plaintiff first installed the integrated process control system ("IPCS") in Defendant's Collierville, Tennessee, plant in 1992.

2.      Plaintiff's principal, Stephen G. Olita, is the inventor of the IPCS.

3.      The only component of the IPCS which Defendant was using in its manufacturing process was the run test software program, database, and associated hardware.

4.      The run test component of the IPCS was upgraded from MS-DOS to be compatible with a Windows-based operating system in 2002.

5.      In 2002 Carrier put out a request for proposals ("RFP") for a "split system run test for its International Comfort Products line to Collierville," and on August 6, 2002, ECI submitted its proposal #3808.

6.      ECI Proposal #3808 also included the sale of new hardware in addition to software. It included new hardware from ECI, the reworking of other vendor's hardware, reworking of old ECI hardware, and three sets of electrical panel fabrication drawings, and operation and maintenance manuals.  In addition, Carrier was to supply certain hardware.

7.      ECI objected to Carrier's Standard Terms and Conditions applicable to ECI Proposal #3808 in Purchase Order Number 4600342969.

8.      The software to be provided per ECI Proposal #3808 was Visual Basic to run on all the run test stations.

9.      An ECI competitor did the installation of ECI Proposal #3808 using the ECI drawings.

10.     ECIMOS obtained a copyright for the ECI Run Test Source Code, Copyright Registration Number TXu 2-012-860, Effective December 2, 2015.

11.     The ECI Run Test Source Code is written in VB6 language, which is a text-based computer language.

12.     ECIMOS obtained a copyright for the ECI Database Script Source Code, Copyright Registration Number TXu 2-012-982, Effective December 2, 2015.

13.     Carrier hired Amtec to develop a software program in LabVIEW to test Carrier's HVAC units.

14.     Carrier's new RES (Runtest Execution System) software program is written in a graphics-based computer language.

15.     The system that Defendant used to replace Plaintiff's system was called the RES software and the MES database.

16.     Carrier is testing the same or similar model air conditioners and heat pumps with both the ECI VB6 software and Amtec's RES software programs.

17.     Carrier does not market, license, or sell software.

18.     On March 31, 2011, ECI proposed to Carrier a contract for a Service Pack ("Service Pack") of 160 hours, totaling $27,200 ($170 per hour), to handle miscellaneous service

items including service calls, troubleshooting, program modifications, and software enhancements, among others.

19.     ECI accepted the Carrier Purchase Order, and both it and its successor ECIMOS provided services under the Service Pack.

20.     Carrier refused to pay ECIMOS a license fee for installing the VB6 code on Windows 7.  ECIMOS ceased providing services under the Service Pack.

21.     The RES software and MES database went live in October 2015.

22.     Defendant's designated corporate representative JC Stewart was involved in the development of the RES software and the run test portion of the MES database.

## III.     GENERAL INSTRUCTIONS ON THE APPLICABLE LAW

A.  <u>Legal Theories of the Case</u>

Turning now to the legal theories in the case, it is my duty to tell you what the law is.  If a lawyer or party has told you that the law is different from what I tell you it is, you must, of course, take the law as I give it to you.  That is my duty.  But it is your duty, and your duty alone, to determine what the facts are and after you have determined what the facts are, to apply the law to those facts, free from any bias, prejudice, or sympathy, either one way or the other.

B.  Nature of the Action

In this case, ECIMOS brings three (3) claims against Carrier, and Carrier brings one (1) claim against ECIMOS.  You must consider each claim separately and decide each claim without regard to your determination as to any other claim.

The claims by ECIMOS against Carrier are for breach of contract, misappropriation of trade secrets, and copyright infringement.  The claim by Carrier against ECIMOS is for breach of contract.

I will instruct you on the applicable law for all of these claims.  I will first instruct you on the law for the parties' breach of contract claims against each other.  I will then instruct you on the law for ECIMOS's claims for misappropriation of trade secrets and copyright infringement.

C.  **Breach of Contract**

In order to prevail on a breach of contract claim, the party bringing the claim has the burden of proving each of the following facts by a preponderance of the evidence:

1.      The existence of a contract;

2.      A breach of the contract; and

3.      Damages caused by the breach.

I will now explain these elements to you.

D.  <u>First Element – Existence of a Contract</u>

A contract is an agreement or exchange of promises between two or more persons to do or not to do certain things.  This agreement or exchange of promises can be oral or in writing and must be supported by something of value.  The requirements for a valid contract are an offer, an acceptance, consideration, competent parties, and a legal purpose.  There is no dispute in this case that the parties are competent or that the alleged contracts were entered into for legal purposes.  Therefore, you must focus only on the first three requirements: offer, acceptance, and consideration.

A contract can be entirely oral or entirely written, or it can be partly oral and partly written.  A contract can also be made up of several different documents if the parties intended that the various documents would be one contract.  The intent of the parties is a question of fact to be resolved by you, the jury, based on the testimony and evidence in this case.  Your goal is to determine whether the parties actually entered into an agreement as to certain subject matter.

An **<u>offer</u>** occurs when one party communicates to the other a willingness to enter into a contract as to certain subject matter.  The communication must be made under circumstances that would justify the other party in understanding that an agreement would result if the offer were accepted.

An **<u>acceptance</u>** occurs when a party communicates by words or actions an agreement to an offer.  It must be made before the offer is withdrawn and must typically match the terms of the offer.  A written confirmation of an agreement, however, operates as a valid acceptance even

if it includes additional or different terms from the offer.  This is true unless the non-conforming written confirmation is expressly made conditional on the initial offeror's agreement to the additional or differing terms, in which case the written confirmation does not operate as a valid acceptance, but as a counter-offer that must itself be accepted for a contract to exist.  Remember that an acceptance need not be in writing; a party can accept an offer by its actions.

Again, a non-conforming written confirmation—that is, a written confirmation of an agreement that includes differing terms from the offer—operates as a valid acceptance as long as it is not expressly made conditional on the offeror's acceptance of the non-conforming terms.  Such a written confirmation therefore establishes a contract between the parties, but the differing terms of the offer and the written confirmation are not part of the contract.  In other words, when one party makes an offer and the other party accepts through a non-conforming written confirmation of the parties' agreement, the parties have a contract, but the contract consists only of the terms on which the parties' writings agree.

Keep in mind, however, that a contract can be partly oral and partly written.  It may be that the parties' writings differ but that they orally agreed to one version or the other.  Your task is to examine the evidence and testimony and determine what the parties actually agreed.

Finally, for there to be a sufficient exchange of **consideration**, something of value must be bargained for and given in exchange for the other party's promise.  This "something of value" may be a promise, an act, or a forbearance (refraining from doing an act).  Its value in money terms is not important; what matters is that it was actually given in exchange for the other party's promise.  For example, if you agree to sell your car to someone for $5,000, there is

30

consideration, but if you agree to give your car to someone as a gift, there is no consideration.  A one-sided agreement—where one party makes a promise, but the other party promises and sacrifices nothing—is not supported by consideration and is not an enforceable contract.

E.  Second Element – Breach of the Contract

When a valid contract has been established, you must determine whether the defending party breached the contract.  To do so, you must first construe the contract's terms.

When **construing** or interpreting a contract's terms, common sense and good faith are the leading touchstones of this inquiry.  All contracts should receive a sensible and reasonable construction and not one that will lead to an absurd consequence.

In construing a contract, the primary objective is to ascertain and give effect to the intention of the parties.  The intent and purport of a written contract must be gathered from the contents of the entire contract and not from any particular clause or provision.  Every term contained in a contract must be given effect if possible.  The rights of the parties to a contract must be measured by the contract the parties themselves made.  The jury is not in the business of writing a contract for either party.

If the language of a contract is plain, unambiguous, and capable of only one reasonable interpretation, the contract's language determines its force and effect.  When there is no ambiguity in a contract, it must be construed according to the terms which the parties have used, and the terms used in the contract should be taken and understood in their plain, ordinary, and popular sense.

If a provision is ambiguous, however, the intent of the parties controls.  The intent of the parties is a question of fact to be resolved by you, the jury, when the contract is ambiguous.  In

attempting to ascertain the parties' intention, the situation of the parties, as well as their purposes at the time the contract was entered, must be determined.  The parties' conduct under the contract, as well their conduct in their previous dealings together, is also relevant to ascertaining the meaning of their contract terms.  For example, if the parties acted as though certain contract terms had a certain meaning, you may consider their actions in interpreting the relevant terms.

A contract is ambiguous when its terms are inconsistent on their face, when it expresses its purpose in an indefinite manner, or when its terms are reasonably susceptible to more than one interpretation.  A contract is not ambiguous if there is only one way to fairly and reasonably understand it.

Ambiguities should be construed against the party who prepared the ambiguous language. A provision of a contract that does not clearly express the intention of the parties should be construed against the party for whose benefit it was inserted.  Ambiguous language in a contract should be construed liberally and most strongly in favor of the party who did not write or prepare the contract and is not responsible for the ambiguity.  Where a contract is entered into upon a printed form prepared by a party, the language of the contract should be strictly construed against that party.  However, parties to a contract are not expected to exercise clairvoyance in spotting hidden ambiguities, and they are protected if they innocently construe in their own favor an ambiguity susceptible of another interpretation.

If a party does not perform according to the contract terms as you have construed them, that party has committed a **<u>breach</u>** of the contract.  A minor and insubstantial breach, however,

does not entitle the other party to reject the contract and avoid responsibility under its terms.  To justify this, a breach must be "material."

A material breach means a substantial breach that is more than a minor or insignificant failure of a party to perfectly meet the terms of the contract.  A party who commits the first material breach of a contract cannot enforce the contract against the other party even if the other party later fails to abide by the terms of the contract.  Factors you may consider in determining whether a breach is material include the following:

1.   The extent to which the injured party will be deprived of the expected benefits under the contract;

2.   The extent to which the injured party can be adequately compensated for loss of benefit;

3.   The extent to which the non-performing party will suffer forfeiture (*i.e.*, a divestiture of specific property without compensation);

4.   The likelihood that the non-performer will cure, that is, correct the failure or has cured the failure, taking into account the circumstances, including any reasonable assurances; and

5.   The extent to which the behavior of the non-performing party comports to standards of good faith and fair dealing.

None of these factors alone is decisive on the question of whether a breach is material, but they should guide your decision.

34

F.   Third Element – Damages Caused by the Breach

A breach of contract causes damages when it leaves the non-breaching party in a worse position than it would have occupied had the contract been fulfilled in accordance with its terms. Therefore, even if the breach does not actually harm the non-breaching party, the non-breaching party still suffers damages if it would have been better off had the other party performed its obligations under the contract.

G.  ECIMOS's Breach of Contract Claim Against Carrier

ECIMOS has sued Carrier for breach of contract.  ECIMOS claims that Carrier breached the parties' software licensing agreement by failing to pay a license fee to ECIMOS and by failing to honor confidentiality requirements.  Carrier disputes that the terms of the parties' contract(s) allow ECIMOS to charge Carrier a license fee for installing ECIMOS's software on a Windows 7 operating system.  Each party claims that the other party was the first to breach the parties' contract(s).  Carrier further disputes that the terms of the parties' contract(s) create the confidentiality agreement claimed by ECIMOS.

You will have to decide the following contract issues according to the instructions I give you:

1.      Has ECIMOS proven by a preponderance of the evidence that it entered into a software licensing contract with Carrier?

2.      If so, has ECIMOS proven by a preponderance of the evidence that Carrier materially breached the software licensing contract, in a way that was not excused, by (1) failing to pay ECIMOS a license fee for installing and using ECIMOS's software on the Windows 7 operating system, and/or by (2) failing to maintain the confidentiality of ECIMOS's materials relating to ECIMOS's software and/or hardware drawings?  A breach of contract must be a material breach.  A minor and insubstantial failure of a party to meet the terms of a contract does not entitle the other party to reject the contract and not be responsible under it.

3.      If so, has ECIMOS proven by a preponderance of the evidence that Carrier's breach of the software contract caused damages to ECIMOS?

If you find that ECIMOS first materially breached the parties' contract(s), then a subsequent (that is, later) breach by Carrier is an excused breach. Therefore, if you find that ECIMOS first materially breached the parties' contract(s), you must find against ECIMOS with respect to the second element of its contract claim and you must return a verdict in favor of Carrier as to ECIMOS's contract claim. However, if you find that ECIMOS did not breach a contract with Carrier—or if you find that ECIMOS breached a contract in a way that was immaterial—then you may find for ECIMOS on its contract claim.

H. <u>Carrier's Breach of Contract Claim Against ECIMOS</u>

Carrier has also sued ECIMOS for breach of contract. Carrier claims that ECIMOS breached the service pack agreement by failing to provide service for the Run Test software and database code. ECIMOS admits that it did not provide all services contemplated under the service contract, though ECIMOS asserts that some services were provided under the service contract. ECIMOS admits that it has not refunded any money allegedly owed to Carrier under the service contract. ECIMOS claims that Carrier is not owed any money because Carrier was the first to breach in the ways I explained earlier.

You will have to decide the following contract issues according to the instructions I give you:

1.      Has Carrier proven by a preponderance of the evidence that it entered into a service contract with ECIMOS?

2.      If so, has Carrier proven by a preponderance of the evidence that ECIMOS materially breached the service contract in a way that was not excused? A breach of contract must be a material breach. A minor and insubstantial failure of a party to meet the terms of a contract does not entitle the other party to reject the contract and not be responsible under it.

3.      If so, has Carrier proven by a preponderance of the evidence that ECIMOS's breach of the service contract caused damages to Carrier?

If you find that Carrier materially breached ECIMOS's alleged software licensing contract, then I am instructing you that ECIMOS's refusal to provide services to Carrier under the service contract is an excused breach.

Therefore, if you find that Carrier materially breached ECIMOS's alleged software licensing contract, you must find against Carrier with respect to the second element of its contract claim and you must return a verdict in favor of ECIMOS as to Carrier's contract claim. However, if you find that Carrier did not breach ECIMOS's alleged software licensing contract—or if you find that Carrier breached the alleged licensing contract in a way that was immaterial—then you may find for Carrier on its contract claim.

I.   **Misappropriation of Trade Secrets**

I will now instruct you about ECIMOS's second theory of relief: misappropriation of trade secrets under the Tennessee Uniform Trade Secrets Act ("TUTSA").  In order to prevail on its misappropriation of trade secrets claim, ECIMOS has the burden of proving each of the following facts by a preponderance of the evidence:

1.      The existence of a trade secret;

2.      That Carrier misappropriated that trade secret; and

3.      That the misappropriation resulted in detriment to ECIMOS.

I will now explain these elements to you.

J.   <u>First Element – Existence of a Trade Secret</u>

A trade secret is any information, without regard to form, including, but not limited to technical, nontechnical or financial data, a formula, pattern, compilation, program, device, method, technique, process, or plan, that:

1.   Derives independent economic value, either actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

2.   Is the subject of efforts that are reasonable under the circumstances to maintain the information's secrecy.

The law does not require ECIMOS to prove that it owns the asserted trade secret information.  It is enough for ECIMOS to show that it has possession of the information and that the information satisfies the requirements set out above.

I will now further explain these requirements.

K.  <u>Independent Economic Value Derived from Secrecy</u>

Information that gives the owner or possessor of the information a competitive advantage in the marketplace over those who do not have knowledge of the information could be considered to "derive independent economic value" from not being generally known or readily ascertainable by proper means.

If certain information could be readily learned by legitimate methods, no one may claim it as a trade secret.  For example, if the information is readily ascertainable by means such as by reading publicly available literature or examining publicly available products, or if the information is commonly known in an industry, then the information cannot qualify as a "trade secret."  However, the fact that some or all of the components of the trade secret are well-known does not preclude protection for a secret combination, compilation, or integration of the individual elements.  Hence, a trade secret can exist in a combination of characteristics and components, each of which, by itself, is in the public domain, but the unified process, design and operation of which in unique combination, affords a competitive advantage and is a protectable secret.

Information that was acquired by Carrier through a confidential relationship may be a trade secret even if the information potentially could have otherwise been obtained through independent research.  This is particularly true where acquisition of the information through independent research would be difficult, costly, or time consuming.

L.  <u>Reasonable Efforts to Maintain Secrecy</u>

ECIMOS is required to take reasonable steps under the circumstances to protect any information which it claims is its trade secret(s).  This does not require absolute secrecy or that ECIMOS use all conceivable efforts to maintain secrecy.  Additionally, the information may be disclosed to employees involved in ECIMOS's use of the information, or to non-employees, if the people to whom the disclosure was made are obligated to keep the information secret.

If ECIMOS did not take reasonable steps to protect the secrecy of certain information, that information does not qualify as a trade secret and you must find for Carrier as to any trade secret claim as to which you make that determination.  This, of course, is for you, the jury, to decide.

M. <u>Factors in Determining the Existence of a Trade Secret</u>

In determining whether a particular piece of information qualifies as a trade secret, you may consider the following:

1.  The extent to which the information is known outside of the business;

2.  The extent to which it is known by employees and others involved in the business;

3.  The extent of measures taken by the business to guard the secrecy of the information;

4.  The value of the information to the business and to its competitors;

5.  The amount of money or effort expended by the business in developing the information;

6.  The ease or difficulty with which the information could be properly acquired or duplicated by others.

N.  ECIMOS's Alleged Trade Secrets

ECIMOS has identified the following alleged trade secrets, which it claims Carrier misappropriated, resulting in detriment to ECIMOS:

1.      ECIMOS's software source code, including the algorithms for the valid tests and test procedures and the way the software source code interacts with ECIMOS's database; and

2.      ECIMOS's assembled hardware drawings and wiring diagrams.

Carrier denies that this information is protectable as a trade secret and further denies that it misappropriated any of the information.  If you find that ECIMOS has established, by a preponderance of the evidence, each of the facts necessary to prove the existence of one or more of its alleged trade secrets, you must then determine whether Carrier misappropriated those trade secrets.

O. <u>Second Element – Misappropriation of the Trade Secret</u>

There are several ways in which a party may be found to have misappropriated a trade secret under the law.  For purposes of this case, however, "misappropriation" means the disclosure or use of a trade secret, without express or implied consent, by a party who knows or has reason to know that its own knowledge of the trade secret was acquired under circumstances that gave rise to a duty to maintain the trade secret's secrecy or limit its use.

Therefore, ECIMOS must prove by a preponderance of the evidence that Carrier (1) disclosed a trade secret, (2) did so without ECIMOS's express or implied consent, and (3) did so while knowing or having reason to know that Carrier acquired knowledge of the trade secret under circumstances that gave rise to a duty to maintain the trade secret's secrecy or limit its use.

To "know" means to have actual knowledge of or to be aware of some fact.  To have "reason to know" means to have actual knowledge or knowledge sufficient that a reasonable person would have inquired further.  Disclosure or use of a trade secret is not improper if the owner of the information consented to the disclosure or use.  Additionally, under the law, more than one person can rightfully possess a trade secret.

If you find by the greater weight or preponderance of the evidence that Carrier misappropriated a trade secret which ECIMOS owned or possessed, the second element is satisfied and you must determine whether the evidence establishes the third element: that the misappropriation resulted in detriment to ECIMOS.

P.   Third Element – Resulting Detriment

In order to establish the third element, ECIMOS must establish by the greater weight or preponderance of the evidence that Carrier's misappropriation proximately caused economic harm or detriment to ECIMOS.

A "proximate cause" of detriment or economic harm is a cause which, in natural and continuous sequence, produces a harm or detriment, and without which the harm or detriment would not have occurred.  In other words, it must be true that the detriment would not have occurred without the misappropriation, but it must also be true that the misappropriation did not lead to the detriment through an unforeseeable and indirect chain of events.  Harm or detriment can be caused by the acts or omissions of one or more persons acting at the same or different times.

If you find that Carrier misappropriated a trade secret and that the misappropriation proximately caused harm or detriment to ECIMOS, you will have found Carrier liable for trade secret misappropriation.

Q.  **Copyright Infringement**

I will now instruct you about ECIMOS's third theory of relief: copyright infringement. In order to prevail on its copyright infringement claim, ECIMOS has the burden of proving each of the following facts by a preponderance of the evidence:

1.      That ECIMOS owns a valid copyright; and

2.      That Carrier copied the protected elements of ECIMOS's copyrighted work.

If ECIMOS proves these elements, the burden will shift to Carrier to show that its work was independently created.  I will now explain these elements to you.

R.  First Element – Ownership of a Valid Copyright

To be eligible for copyright protection, a work must be original and in a form that can be seen, heard, reproduced, or communicated, either directly or with the aid of a machine or device. A work is original if it was created independently, as opposed to being copied from another work, and if it contains at least some minimal degree of creativity.  A work can be original even if it incorporates elements that are not original, but only the work's original elements are protected by copyright.

A copyright registration issued by the United States Copyright Office presumptively establishes that a copyright is valid.  Because ECIMOS has produced two copyright registrations in this case—one for its Run Test software source code and one for its Run Test database script source code—the validity of those copyrights is presumptively established, and ECIMOS has met its burden of showing that it owns a valid copyright as to its Run Test software source code and its Run Test database script source code.  It is irrelevant that ECIMOS obtained its copyright registrations after Carrier developed the RES software.  A plaintiff only needs to obtain a copyright registration before suing in court, and then the plaintiff can sue about conduct going back to the time the plaintiff's work was created.

Therefore, unless you find that ECIMOS's copyrights contain no original elements whatsoever, I am instructing you that ECIMOS has satisfied the first element of its copyright claim with respect to both its Run Test software source code and its Run Test database script source code.

S.   <u>Second Element – Copying of the Protected Elements</u>

A plaintiff can establish that a defendant copied the protected elements of the plaintiff's work by showing that:

1.      The defendant had access to the plaintiff's work; and

2.      The plaintiff's work and the defendant's work are substantially similar with respect to the protected elements of the plaintiff's work.

If the plaintiff shows this, the burden shifts to the defendant to show that the defendant's work was independently created.  I will now further explain these terms to you.

T.  Access

ECIMOS can show that Carrier had "access" to ECIMOS's software or database scripts by showing that Carrier had a reasonable opportunity to see those works.  It is not necessary to show that Carrier actually saw the works before hiring Amtec to create the RES software if the evidence reasonably establishes that Carrier could have seen it and could have copied it.

In this case, Carrier contends that it hired Amtec to independently create the RES software.  ECIMOS is not required to prove that Amtec had access to ECIMOS's copyrighted materials as part of the second element of its copyright infringement claim.  ECIMOS is only required to prove that Carrier had access to them because Carrier is the defendant in this case.  If Carrier did not give Amtec access to the materials, that is relevant to Carrier's defense of independent creation—which I will discuss shortly—but it is not relevant to ECIMOS's initial burden of proof.

If ECIMOS cannot show that Carrier had access to ECIMOS's software or database scripts, ECIMOS can still establish a rebuttable presumption of copying by showing that the RES source code is so strikingly similar to ECIMOS's copyrighted material that the similarity is unlikely to have occurred unless there was copying.  Put another way, if ECIMOS's work and Carrier's work are so strikingly similar that a reasonable person would assume Carrier copied from ECIMOS and that there is no possibility of independent creation, coincidence, or prior common source, then ECIMOS is entitled to a rebuttable presumption that copying occurred.  A "rebuttable presumption" means that you assume that copying occurred unless Carrier proves otherwise.

You cannot, however, base a finding that Carrier had access to ECIMOS's software or database scripts on mere speculation, conjecture, or a guess.  To support a finding of access, there must be more than just a slight possibility of access.  There must be a reasonable possibility of access.

U.  Substantial Similarity

Having discussed access, I will now discuss the issue of substantial similarity.  ECIMOS must prove that Carrier's accused work is substantially similar to copyrightable expression in ECIMOS's copyrighted work.  An accused work is "**substantially similar**" to a copyrighted work if an ordinary person would conclude that the creator of the accused work copied material that is of substance and value from the copyrighted work.

Even if the degree of similarity between a copyrighted work and an accused work is small in *quantity*, you can still find substantial similarity if the similar portions are important to the copyrighted work in *quality*.  On the other hand, if the similarities are minimal and trivial, then you should find that the works are not substantially similar.

Not all similarities support a claim of copyright infringement.  You will recall that ECIMOS's burden with respect to the second element of copyright infringement is to show that its work and Carrier's work are substantially similar with respect to the protected elements of ECIMOS's work.  The question, therefore, is not whether the parties' software is substantially similar, but whether it is substantially similar with respect to the protected elements of ECIMOS's software.

To determine this, you will need to filter ECIMOS's copyrighted computer programs to decide what part of its copyrighted software programs are protected by the law and what part is not protected.  You will need to break down ECIMOS's program into its structural parts so that you can consider whether these parts—or elements—are protected by the law.

53

V. <u>Protected and Unprotected Expression</u>

In copyright law, it is important to distinguish between the ideas in a work and the author's expression of those ideas.  Copyright law protects only a work's original "expression."  This includes the *way* that the work expresses ideas, but it does not include the ideas themselves.  For example, in a book, creative combinations of word choices are protectable, but individual words, common turns of phrase, reported facts, and underlying themes cannot be protected.  Copyright law does not give an author the right to prevent others from copying or using the underlying ideas contained in the author's work, such as procedures, processes, systems, methods of operation, concepts, principles, or discoveries.

Certain ideas can only be expressed in one or a limited number of ways, and therefore no expression of these ideas can be considered original.  This concept is called the "merger doctrine" because when there is only one way, or only a few ways, of expressing an idea, the expression is said to have "merged" with the idea.

The merger doctrine can apply to any unprotected matter, such as ideas, facts, or functions.  The doctrine can apply to literal text, such as when facts can be effectively expressed only by using specific words or a limited range of words.  The merger doctrine can also apply to non-literal elements of a work, such as when it is necessary to execute instructions in the same order as another work in order to follow a manufacturer's requirements.  The merger doctrine applies to computer software, such as when there are a limited number of ways of performing certain functions.

Additionally, a copyrighted work's protected expression does not include the work's elements that are indispensable or at least standard in the treatment of a particular subject. This includes elements that are dictated by external factors and elements that are standard or commonplace in the relevant field.

In the computer software context, the elements of a software program that are dictated by hardware standards, mechanical specifications, compatibility requirements, industry practices, or standard programming practices are not protected. Copying such elements is permitted, and even in the absence of copying, similarities between such elements is to be expected because they are not original.

To be protected, an element of a software program must represent a choice between feasible programming alternatives within real-world constraints. When determining whether an element of a software program is protected, it is helpful to ask whether it would have been reasonable for the programmer to make a meaningfully different programming decision with respect to the element in question. If any reasonable programmer would have made the same or a very similar programming decision based on external requirements, industry standards, or logic and efficiency, then the element in question is not protected.

Again, with respect to unoriginal elements, not only is copying permitted, but similarities are to be expected even in the absence of copying.

W. <u>ECIMOS's Unprotected Expression</u>

In this case, ECIMOS alleges that Carrier copied its Run Test software source code and/or Run Test database scripts.  I am instructing you that the following elements of these copyrighted software programs are **<u>unprotected</u>** as a matter of law:

1.      Elements dictated by Carrier's air conditioners and heat pumps;

2.      Elements dictated by Carrier's testing hardware;

3.      Elements dictated by Carrier's computers, including their operating systems and other system requirements;

4.      Elements dictated by ECIMOS's hardware and wiring drawings, which are not copyrighted and are external to the copyrighted source codes;

5.      Elements dictated by the idea of a test itself, because ideas are unprotectable regardless of who came up with them;

6.      Parameter values and common terms used in the HVAC industry; and

7.      The names of ECIMOS's valid tests.

Similarities between the parties' software programs with respect to these elements cannot establish copying.  When comparing the parties' software programs to determine whether they are substantially similar, you must exclude these elements as well as any others that you find are unprotected.

Keep in mind, however, that a software element may be related to an idea or external requirement without being "dictated" by it.  To be dictated by something is to be required by it, not simply to be related to it in some way.

X.  Independent Creation

If you find that ECIMOS has proven both elements of copyright infringement, the burden shifts to Carrier to show that its allegedly-infringing materials were independently created. Carrier asserts that it created its work independently—without copying ECIMOS' copyrighted work.  Specifically, Carrier contends that it hired Amtec to independently create the RES software for Carrier and did not give Amtec access to ECIMOS's Run Test software source code or database script source code.  Carrier further contends that it created the MES database independently without copying the ECI database.


If you find by a preponderance of the evidence that Carrier (including through Amtec) created its allegedly-infringing materials independently, you should find that Carrier did not infringe ECIMOS's relevant materials.  For example, if Carrier proves by a preponderance of the evidence that it did not give Amtec access to ECIMOS's Run Test software source code and that Amtec independently created the RES software, you should find that Carrier did not infringe ECIMOS's copyright in the Run Test software source code.  Similarly, if Carrier proves by a preponderance of the evidence that it created its RES/MES database script source code independently without using ECIMOS's Run Test database script source code, you should find that Carrier did not infringe ECIMOS's copyright in the Run Test database script source code.

## IV.    DAMAGES

### A.  Consider Damages Only If Necessary

I will now instruct you on the law as it relates to damages.  If a party has proven by a preponderance of the evidence that another party is liable on a claim, then you must determine the damages if any to which the party is entitled.  You must do this only under the instructions I will give you as to how to calculate damages.  You should not infer that either party is entitled to recover damages merely because I am instructing you on the elements of damages.  It is exclusively your function to decide upon liability, and I am instructing you on damages only so that you will have guidance should you decide that either party is entitled to recovery.

B.  <u>Multiple Claims: No Duplicate Damages</u>

At the outset, I instruct you that you cannot award compensatory damages more than once for the same loss, harm, or detriment.  For example, if ECIMOS were to prevail on two claims and establish a total injury of one dollar, you could not award ECIMOS one dollar of compensatory damages on both claims; it is only entitled to be made whole again, not to recover more than it lost.

C.  <u>Prejudgment Interest</u>

Prejudgment interest is the interest that money would have earned before the trial if the party who is entitled to that money received the money when it should have been received.  In this case, the parties have agreed that the question of prejudgment interest, should it be applicable, should be answered by the Court after the trial.  Therefore, you are instructed not to include prejudgment interest for any party in any award that you might make in your verdict form.

D.  No Speculative Damages

You may not award remote or speculative damages.  You may not, therefore, include any damages to compensate for losses or harms that, although possible, are based on conjecture, speculation, or are not reasonably certain.

To state this principle in another way, damages are prohibited as speculative when their existence is uncertain, but they are permitted when only their amount is uncertain.  Mathematical certainty is not required.  Instead, the amount of damages must be shown with such reasonable degree of certainty as the situation permits.

In determining whether the proof meets the requisite degree of certainty, you may consider whether a party is responsible for creating the difficulty in ascertaining the exact amount of damages.  If you make that determination, then you may, but you are not required to, resolve any doubt about the amount of damages against the party responsible for the difficulty.

E.  <u>Reasonable Certainty</u>

A party is not entitled to recover damages for a particular loss or type of harm unless the party proves that it is reasonably certain that the party has suffered such a loss or type of harm as a result of an action or inaction by the accused party.  However, once a party proves that it is reasonably certain that the party has suffered a particular loss or type of harm as a result of an action or inaction by the accused party, the law does not require the party to prove the exact amount of that loss or harm.

If it is reasonably certain that the party has suffered a particular loss or type of harm as a result of a wrongful action or failure to act by the accused party, the injured party is entitled to recover damages for that loss or harm as long as there is some reasonable basis for estimating or approximating the amount of the loss or harm.  A party may not be denied damages merely because the amount of the loss or harm is uncertain or difficult to determine.

**F.  Breach of Contract: Damages**

You will recall that the causation of damages is the third element of a breach of contract claim, so if you determine that a party did not suffer any contract damages, you should find against it on its claim and not reach the question of damages.  If you find for either party as to its breach of contract claim, however, then you must then determine the amount of damages that the complaining party should recover.

When a contract is breached, the complaining party is entitled to be placed in as good a position as it would have occupied had the contract been fulfilled in accordance with its terms.  The complaining party is not entitled to be put in a better position than it would have occupied had there been full performance.

The damages to be awarded are those that may fairly and reasonably be considered as arising out of the breach or those that may reasonably have been in the contemplation of the parties when the contract was made.  Damages that are remote or speculative may not be awarded.

### G.  Trade Secret Misappropriation: Damages

If you find that Carrier is liable to ECIMOS for misappropriation of trade secrets, then you should consider whether ECIMOS has suffered monetary damages as a result of that misappropriation.

The party seeking damages has the burden to prove to you that it has suffered harm due to the misappropriation of its trade secrets.  Damages are designed to restore an injured party to the position it would have occupied had the misappropriation not occurred.

In regard to ECIMOS's claim for misappropriation of trade secrets, you may award damages for:

1.    Actual loss to ECIMOS, as compared to the position it would have occupied had the misappropriation not occurred; and

2.    Benefits gained by Carrier that have not been taken into account in computing ECIMOS's actual loss.

Alternatively, instead of these measures of misappropriation damages, you may award ECIMOS damages in the amount of a reasonable royalty for Carrier's use or disclosure of a trade secret.  If you award ECIMOS a reasonable royalty, then you may not award it any damages under the other two measures of damages laid out earlier.

H.  <u>Trade Secret Misappropriation: Damages – Standard of Proof</u>

Because damages in trade secret cases may be difficult to compute, ECIMOS only has to provide a reasonable basis from which an amount of damages can be inferred or approximated. ECIMOS does not have to prove the exact amount of its damages or prove these damages with mathematical certainty.

I caution you, however, that you may not award damages based on speculation.  Any award of damages must be reasonable in light of all of the evidence in the case.  It is ECIMOS's burden, not Carrier's, to demonstrate the amount of appropriate damages.

I.   <u>Trade Secret Misappropriation: Damages – ECIMOS's Lost Profits</u>

ECIMOS claims that it has suffered actual monetary loss from misuse of its trade secrets. This actual loss can include both out-of-pocket expenses as well as lost profits.  If you find, for example, that ECIMOS would have realized profits from using trade secrets in its business and that it has now lost those profits due to misappropriation by Carrier, then you may award "actual loss" damages in the amount of ECIMOS's lost profits for the time period that you determine is appropriate.

Remember, however, that any award of damages for trade secret misappropriation must be reasonable and must not be based on speculation.

J.   Trade Secret Misappropriation: Damages – Carrier's Additional Gain

In measuring ECIMOS's damages, you may consider what benefit Carrier has gained from misuse of ECIMOS's trade secrets.  As a measure of ECIMOS's damages, you may award ECIMOS the amount of Carrier's monetary gain, if any, attributable to the misappropriation and not taken into account in computing ECIMOS's actual loss.

ECIMOS has the burden of establishing the benefits Carrier gained as a result of misappropriation.  Carrier has the burden of establishing any portion of those benefits not attributable to the misappropriation of trade secrets.

You have heard testimony about the amount of revenues and profits that Carrier earned during 2016 and the last quarter of 2015.  If you find that Carrier misappropriated ECIMOS's trade secrets, but you also find that Carrier's operations would not have been suspended even if Carrier had not misappropriated ECIMOS's trade secrets, then I am instructing you that you must not award ECIMOS any damages relating to Carrier's gain from misappropriation.  This is because the first measure of damages—actual loss—includes ECIMOS's lost profits, and if Carrier only benefited by avoiding paying money to ECIMOS, then Carrier has no gains that are not accounted for by ECIMOS's lost profits.

However, if you find that Carrier would have suspended some operations if it did not misappropriate ECIMOS's trade secrets, then you may award ECIMOS damages in the amount of the benefits gained by those operations.  Note that ECIMOS would only be entitled to recover a portion of Carrier's *profits*—not sales—during any period you determine to be appropriate.

Remember that ECIMOS has the burden of establishing the benefits Carrier gained as a result of misappropriation, and Carrier has the burden of establishing any portion of those benefits not attributable to the misappropriation. This means that ECIMOS has the burden of proving that Carrier would have suspended some operations as a result of misappropriating ECIMOS's trade secrets. ECIMOS also has the burden of proving the amount of gross revenues Carrier earned from those suspended operations during the relevant time frame that operations would have been suspended. If ECIMOS demonstrates both the existence and amount of Carrier's gross revenues from misappropriation, then Carrier has the burden of proving the amount of its net profits from those revenues after deducting related expenses.

K.  <u>Trade Secret Misappropriation: Damages – Reasonable Royalty Rate</u>

A reasonable royalty rate is the amount ECIMOS would have received from a contract with Carrier that permitted Carrier to use ECIMOS's computer software for the time period at issue in this lawsuit.  Evidence of ECIMOS's and Carrier's past negotiations of a potential contract may be used to determine the reasonable royalty rate.

L.   <u>Trade Secret Misappropriation: Damages – Willful and Malicious Misappropriation</u>

ECIMOS also seeks an award of "exemplary" damages for misappropriation of trade secrets.  You may consider an award of exemplary damages only if you have already found that ECIMOS has suffered actual damage as a legal result of Carrier's misappropriation and you have made an award for compensatory damages under the measures discussed earlier.

Exemplary damages may be considered if, and only if, ECIMOS has shown by "clear and convincing evidence" that Carrier has acted both willfully and maliciously.  An act is done "willfully" if it is done voluntarily and intentionally and with the specific intent to commit such an act.  An act is done "maliciously" if it is prompted or accompanied by such gross indifference to the rights of others as to amount to a willful act done intentionally without just cause or excuse.

Clear and convincing evidence is a different and higher standard than preponderance of the evidence.  It means that Carrier's wrongful conduct, if any, must be so clearly shown that there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.

If you determine that ECIMOS has proven by clear and convincing evidence that Carrier willfully and maliciously misappropriated ECIMOS's trade secret(s), then it will be up to the Court to determine the amount of exemplary damages ECIMOS will recover.

**M. Copyright Infringement: Damages**

If you find for ECIMOS on its copyright infringement claim, you must determine ECIMOS's damages.  A copyright owner is entitled to recover:

1.      The actual damages it has suffered as a result of infringement; and

2.      Any of the infringer's profits that are attributable to infringement and were not taken into account in computing the copyright owner's actual damages.

In establishing an infringer's profits, the copyright owner is required to present proof of the infringer's gross revenue associated with infringement, and the infringer is required to prove its deductible expenses and the elements of profit attributable to factors other than the copyrighted work.  Profit is calculated by subtracting all deductible expenses from gross revenue.

You may award ECIMOS a portion of Carrier's profits only if you find that ECIMOS has showed a reasonable relationship between copyright infringement and Carrier's gross revenue. The relevant revenue does not include any revenue that Carrier would have earned regardless of infringement.  ECIMOS has the burden of proving, by a preponderance of the evidence, the existence and the amount of Carrier's gross revenue that is reasonably related to infringement.

If ECIMOS meets this burden, Carrier will have the burden of proving, by a preponderance of the evidence, the amount of deductible expenses incurred in producing the

revenue that ECIMOS has shown was related to infringement.  Deductible expenses include all operating costs, overhead costs, and production costs incurred in producing the relevant revenue. In determining ECIMOS's damages, you must subtract these deductible expenses from the gross revenue ECIMOS has shown was related to infringement.  This is very important.  ECIMOS is not entitled to Carrier's *revenues* attributable to infringement; it is only entitled to Carrier's *profits* attributable to infringement.

Carrier will also have the burden of proving, by a preponderance of the evidence, the percentage of its profit, if any, that is attributable to factors *other* than infringement.  Once ECIMOS proves the amount of Carrier's gross revenues that is reasonably related to infringement, all of the profit on that revenue is presumed to be attributed to the infringement unless Carrier can show otherwise.

V.       **VERDICT**

Finally, ladies and gentlemen, we come to the point where we will discuss the form of your verdict and the process of your deliberations.  You will be taking with you to the jury room a verdict form that will reflect your findings.  The verdict form reads as follows:

[Read Verdict Form]

You will be selecting a presiding juror after you retire to the jury room.  That person will preside over your deliberations and be your spokesperson here in court.  When you have completed your deliberations, your presiding juror will fill in and sign the verdict form.

Each of you should deliberate and vote on each issue to be decided.

Before you return your verdict, however, each of you must agree on the answer to each question so that each of you will be able to state truthfully that the verdict is yours.

The verdict you return to the Court must represent the considered judgment of each juror. In order to return a verdict, it is necessary that each juror agree to each answer.  Your verdict must be unanimous.

It is your duty to consult with one another and to reach an agreement if you can do so without violence to individual judgment.  Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors.  In the course of

your deliberations, do not hesitate to re-examine your own views and to change your opinion if you are convinced that it is not correct.  But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

We will be sending with you to the jury room all of the exhibits in the case.  You may not have seen all of these previously and they will be there for your review and consideration.  You may take a break before you begin deliberating, but do not begin to deliberate and do not discuss the case at any time unless all of you are present together in the jury room.  Some of you have taken notes.  I remind you that these are for your own individual use only and are to be used by you only to refresh your recollection about the case.  They are not to be shown to others or otherwise used as a basis for your discussion about the case.

If a question arises during deliberations and you need further instructions, please write your question on a sheet of paper, knock on the door of the jury room, and give the question to the court security officer.

I will read your question and I may call you back into the courtroom to try to help you. Please understand that I may only answer questions about the law and I cannot answer questions about the evidence.  I caution you, however, that with regard to any message or question you might send me, you should not tell me your numerical division at the time.

I remind you that you are to decide this case based only on the evidence you have heard in court and on the law I have given you.  You are prohibited from considering any other

information and you are not to consult any outside sources for information.  You must not communicate with or provide any information, photographs, or video to anyone by any means about this case or your deliberations.  You may not use any electronic device or media, such as a telephone, cell phone, smart phone or computer; the Internet, any text or instant messaging service; or any chat room, blog, or website such as Facebook, My Space, LinkedIn, YouTube or Twitter, to communicate with anyone or to conduct any research about this case.

I.    GENERAL INSTRUCTIONS ........................................................................... 1

   A.   Organization Not to Be Prejudiced ......................................................... 3

   B.   Organizations/Corporations Act Through Their Authorized Employees or Agents ........... 4

   C.   Burden of Proof and Consideration of the Evidence ........................... 5

   D.   Credibility and Weighing of Evidence .................................................. 6

   E.   Impeachment – Inconsistent Statements or Conduct ........................... 9

   F.   Direct and Circumstantial Evidence ..................................................... 10

   G.   Evidence ................................................................................................ 11

   H.   "Inferences" Defined ........................................................................... 12

   I.   Statements and Arguments of Counsel ................................................ 13

   J.   Totality of the Evidence ....................................................................... 14

   K.   Limited Admission of Evidence ........................................................... 15

   L.   Carrier's Revenues Not To Be Considered In Determining Liability ............... 16

   M.   Juror Notes ........................................................................................... 17

   N.   Comments by the Court ........................................................................ 18

   O.   Opinion Testimony ............................................................................... 19

   P.   Deposition & Previous Testimony ........................................................ 20

   Q.   Demonstrative Charts and Summaries .................................................. 21

II.   STATEMENT OF THE CASE AND STIPULATED FACTS ........................................ 22

   A.   Statement of the Case ........................................................................... 22

   B.   Stipulated Facts .................................................................................... 23

III.  GENERAL INSTRUCTIONS ON THE APPLICABLE LAW ....................................... 26

   A.   Legal Theories of the Case ................................................................... 26

   B.   Nature of the Action ............................................................................. 27

   C.   **Breach of Contract** ............................................................................ 28

   D.   First Element – Existence of a Contract .............................................. 29

   E.   Second Element – Breach of the Contract ........................................... 32

   F.   Third Element – Damages Caused by the Breach ................................ 35

   G.   ECIMOS's Breach of Contract Claim Against Carrier ........................ 36

   H.   Carrier's Breach of Contract Claim Against ECIMOS ........................ 38

   I.   **Misappropriation of Trade Secrets** .................................................. 40

   J.   First Element – Existence of a Trade Secret ........................................ 41

   K.   Independent Economic Value Derived from Secrecy ........................... 42

   L.   Reasonable Efforts to Maintain Secrecy .............................................. 43

M.  Factors in Determining the Existence of a Trade Secret.................................... 44

N.  ECIMOS's Alleged Trade Secrets .......................................................... 45

O.  Second Element – Misappropriation of the Trade Secret ............................... 46

P.  Third Element – Resulting Detriment .................................................... 47

Q.  **Copyright Infringement** ................................................................. 48

R.  First Element – Ownership of a Valid Copyright ....................................... 49

S.  Second Element – Copying of the Protected Elements .................................. 50

T.  Access ...................................................................................... 51

U.  Substantial Similarity .................................................................... 53

V.  Protected and Unprotected Expression ................................................... 54

W.  ECIMOS's Unprotected Expression ..................................................... 56

X.  Independent Creation ..................................................................... 58

**IV. DAMAGES** ................................................................................. **59**

A.  Consider Damages Only If Necessary .................................................... 59

B.  Multiple Claims: No Duplicate Damages ................................................ 60

C.  Prejudgment Interest ..................................................................... 61

D.  No Speculative Damages .................................................................. 62

E.  Reasonable Certainty ..................................................................... 63

F.  **Breach of Contract: Damages** ......................................................... 64

G.  **Trade Secret Misappropriation: Damages** ........................................... 65

H.  Trade Secret Misappropriation: Damages – Standard of Proof ........................ 66

I.  Trade Secret Misappropriation: Damages – ECIMOS's Lost Profits................... 67

J.  Trade Secret Misappropriation: Damages – Carrier's Additional Gain ............... 68

K.  Trade Secret Misappropriation: Damages – Reasonable Royalty Rate ................ 70

L.  Trade Secret Misappropriation: Damages – Willful and Malicious Misappropriation ..... 71

M.  **Copyright Infringement: Damages** ................................................... 72

**V.  VERDICT** ................................................................................... **74**