IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| ECIMOS, LLC, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | Case No. 2:15-cv-02726-JPM-cgc |
| v. | ) | |
| | ) | |
| CARRIER CORPORATION, | ) | |
| | ) | |
|     Defendant. | ) | |

**ORDER DENYING MULTIPLE ECIMOS MOTIONS**

Before the Court is Plaintiff ECIMOS, LLC's ("ECIMOS") multiple motions requesting that the Court clarify and amend previous orders in ECF Nos. 397 and 713, as well as a request that Plaintiff be allowed to issue a subpoena to Logical Systems, which motions were filed as one document on July 11, 2022.  (ECF No. 716.)  Defendant filed its Response to ECIMOS's Motion on July 25, 2022, requesting sanctions and injunctive relief.  (ECF No. 719.)  Plaintiff filed its Reply to Carrier Response on August 8, 2022.  (ECF No. 721.)

Plaintiff's multiple motions are **DENIED**.  Defendant's motion for sanctions and injunctive relief is **DENIED IN PART** and **GRANTED IN PART**.

I.    **BACKGROUND**

This case is a suit by ECIMOS against Carrier Corporation ("Carrier"), alleging breach of contract, trade secret misappropriation, conversion, and violations of the Digital Millennium Copyright Act and the Copyright Act of 1976 regarding Defendant Carrier's use

of Plaintiff ECIMOS's Interprocess Communication Status ("IPCS") software.  (ECF No. 1-3.)  A jury found, relevantly, that Defendant's runtest execution system ("RES") infringed upon the copyrighted elements of Plaintiff's database scripts on July 9, 2018.  (ECF No. 359 at PageID 7966-67.)  The jury awarded Plaintiff $1 million in copyright damages, $1.5 million in contract damages, and a $5 million disgorgement award for profits Carrier earned from its Collierville, Tennessee plant for a fifteen-month period between October 2015 and December 2016.  (Id. at 7962, 7967.)  The Court reduced the jury's copyright infringement award to $282,800 to reflect the $50 per station per month licensing fee Plaintiff proposed in 2014. (ECF No. 467 at PageID 11671.)

Following trial, Plaintiff moved for an injunction on July 24, 2018.  (ECF No. 363.) The Court granted an injunction on October 9, 2018 (ECF No. 382) and modified that order on November 20, 2018.  (ECF No. 397.)  That injunction restricted Defendant's use of the RES database and required Defendant to pay a licensing fee of $50 per run-test station per month.  (Id. at PageID 11044.)  The Court rejected an argument by Plaintiff that it was entitled to additional disgorgement of profits for the time period following the trial at that juncture, holding that it would not "extrapolate additional disgorgement of profits from the jury's verdict."  (Id. at PageID 11041.)

Plaintiff appealed that decision on December 4, 2018.  (ECF No. 403.)  The Sixth Circuit affirmed that Plaintiff was not entitled to disgorgement of additional profits and further reduced its copyright damages.  See generally ECIMOS, LLC v. Carrier Corp., 971 F.3d 616 (6th Cir. 2020).

The Court set an August 17, 2020 deadline for Defendant to finish removing Plaintiff's intellectual property from its Collierville plant.  (ECF No. 586; see also ECF No.

601.)  Defendant missed that deadline and paid a $500,000 penalty to the Court.  (ECF No.

626.)  A Court-appointed Special Master subsequently conducted two audits, and confirmed

that Defendant's intellectual property was no longer incorporated "within [Defendant's] new

non-infringing run test solution."  (ECF No. 644.)  The Court adopted the findings of the

Special Master, without timely objection, on November 5, 2021.  (ECF No. 713.)

## II.    ANALYSIS

### a.  PLAINTIFF'S MOTION TO CLARIFY AND MODIFY THE "ORDER AMENDING PREVIOUS INJUNCTION ORDER"

Plaintiff argues that Defendant's payment of a licensing fee is an insufficient remedy

for Defendant's copyright infringement.  (ECF No. 716 at PageID 15964–65.)  Plaintiff also

argues that the jury verdict in this case limited Defendant's disgorgement of profits to a

"random fifteen-month period" in error.  (Id. at PageID 15965.)  Plaintiff claims that the

proper time period in which to assess disgorgement of profits is "110 months."  (Id. at PageID

15966.)  This 110 months includes both time prior to the "random fifteen-month period" and

time after the jury verdict.  (Id.)  It argues that the post-trial time period was time in which

Defendant continued to infringe on Plaintiff's copyright and is "no longer . . . speculative."

(Id. at PageID 15969) (quotation marks omitted).  Plaintiff frames this argument as a request

that the Court clarify "why the random 15 months of profits were presented to the jury as

Carrier's sole past profits subject to infringement."  (Id. at PageID 15968) (quotation marks

omitted).

This Motion for Clarification is not a request that the Court "explain or clarify

something "ambiguous or vague" in the Court's order or judgment" but a request that the

Court reconsider its own previous rulings and judgments, and those of the Sixth Circuit.  In re

Oakland Physicians Med. Ctr., L.L.C., No. 2:19-CV-11773, 2020 WL 1323995, at *2 (E.D. Mich. Mar. 20, 2020) (quoting Resolution Tr. Corp. v. KPMG Peat Marwick, No. 92-1373, 1993 WL 211555, at *2 (E.D. Pa. June 8, 1993)).

The Sixth Circuit held that Plaintiff is not entitled to post-trial disgorgement and the jury's findings in the instant case were limited to a 15-month period. ECIMOS, 971 F.3d 616, 638. Under the mandate rule, the Court must comply with "the dictates of the superior court." United States v. O'Dell, 320 F.3d 674, 679 (6th Cir. 2003) (citing United States v. Ben Zvi, 242 F.3d 89, 95 (2d Cir.2001)). Plaintiff is foreclosed from relitigating an issue "expressly or impliedly decided by the appellate court." Id. (emphasis omitted).

Plaintiff did not seek the additional pre-trial profits that it now requests before the trial, in its post-trial motions, or on appeal. (See ECF No. 371 at PageID 10027–29.) The Court may only reconsider a final verdict in "exceptional or extraordinary circumstances" where the "principles of equity mandate relief." Olle v. Henry & Wright Corp., 910 F.2d 357, 365 (6th Cir. 1990) (emphasis altered from original); see also Fed. R. Civ. P. 60(b)(6). "It is well-settled that 'parties cannot use a motion for reconsideration to raise new legal arguments that could have been raised before a judgment was issued.'" Bank of Ann Arbor v. Everest Nat. Ins. Co., 563 F. App'x 473, 476 (6th Cir. 2014) (citing Roger Miller Music, Inc. v. Sony/ATV Publ'g, 477 F.3d 383, 395 (6th Cir. 2007)). There is a strong "public policy favoring finality of judgments and termination of litigation." McCurry ex rel. Turner v. Adventist Health Sys./Sunbelt, Inc., 298 F.3d 586, 592 (6th Cir. 2002). Plaintiff has had many years and ample opportunity to raise the new issue of entitlement to additional disgorgement prior to this late juncture.

Defendant's Motion is therefore **DENIED**.

4

> b. *PLAINTIFF'S MOTION TO CLARIFY AND MODIFY THE "ORDER ADOPTING REPORT OF THE SPECIAL MASTER REGARDING THE SECOND AUDIT OF THE NON-INFRINGING RUN TEST SOLUTION"*

Plaintiff argues that it is entitled to the $500,000 penalty levied against Defendant for a two-week delay in implementing the Court's orders in ECF No. 588. (ECF No. 716 at PageID 15974–75.) Plaintiff claims that this penalty has "has actually proven beneficial to Carrier," and accuses the Court of "capitulat[ing] to Carrier's demands" in imposing an "ineffective" fine of this size. (Id. at PageID 15975–76.) Plaintiff also argues that this money was received by the Court "on behalf of ECIMOS" and should not have "inured to the Court's benefit." (Id. at PageID 15977.) Plaintiff frames this argument as a request that the Court clarify "the receiver of such funds upon final resolution." (Id. at PageID 15975.) Plaintiff also "requests this Court to clarify how such a small penalty compared with [Defendant's] large revenues would have any coercive effect" on Defendant. (Id. at PageID 15977.)

The Court has previously "clearly stated" and fully considered the purpose behind the penalty and who should receive the penalty payments. (ECF No. 690 at PageID 14565.) Thus, the Court has already rejected Plaintiff's request for these penalty payments. (See ECF No. 690.) "Courts are under no obligation, and routinely decline, to consider restatements of prior arguments." Union Home Mortg. Corp. v. Cromer, No. 4:21CV385, 2022 WL 5174149, at *2 (N.D. Ohio Mar. 16, 2022).

Defendant's motion is therefore **DENIED**.

> c. *PLAINTIFF'S MOTION TO CLARIFY REDUCED LICENSE BREACH DAMAGE AMOUNT*

Plaintiff argues that "[t]here is no copyrighted ECIMOS 'software-script source code'" because Plaintiff actually holds copyrights for a database script source code and a run test

source code.  (ECF No. 716 at PageID 15980.)  This was the fashion in which the copyright

was phrased in the Sixth Circuit appellate decision in the instant case.  See ECIMOS, LLC v.

Carrier Corp., 971 F.3d 616, 627 (6th Cir. 2020).  Plaintiff requests that the Court reverse the

Court of Appeals and order Defendant to pay "the $282,800 it rightly assessed" against

Defendant for software migration and runtest station repair costs.  (ECF No. 716 at PageID

15981.)  Plaintiff frames this argument as a "clarification" of the copyright infringement at

issue.  (Id.)

This Motion for Clarification is not a request that the Court "explain or clarify

something "ambiguous or vague" in the court's order or judgment" but a request that the Court

overrule a prior judgment of the Sixth Circuit.  Oakland Physicians Med. Ctr., 2020 WL

1323995 at *2.  This Court is "not free to ignore" the Sixth Circuit's decision.  Brautigam v.

Damon, 697 F. App'x 844, 849 (6th Cir. 2017).  Rather, this Court "must implement both the

letter and the spirit of the mandate" from the Court of Appeals.  Allard Enters., Inc. v.

Advanced Programming Res., Inc., 249 F.3d 564, 570 (6th Cir. 2001).

Defendant's Motion is therefore **DENIED**.

> d.  *PLAINTIFF'S MOTION THAT THE FINDINGS OF THE SPECIAL MASTER BE "REMOVED"*

Plaintiff argues that it was "prevented by this Court from reviewing Carrier's

developments" in implementing its non-infringing runtest software.  (ECF No. 716 at PageID

15982.)  Plaintiff "chose not to . . . review" Defendant's non-infringing software because of

the expense of doing so.  (Id.)  Plaintiff also "did not believe that it would be necessary for its

surrogate" to be present at the hearing to enforce injunction compliance by Carrier, held on

August 11, 2021.  (Id. at PageID 15982; see also ECF No. 711.)   Plaintiff uses the instant

motion to object to the Court's findings in that August 11, 2021 hearing. (ECF No. 716 at PageID 15982; <u>see also</u> ECF No. 711.)

Plaintiff also argues that it "timely objected to the Special Master's findings" in a letter it provided to the Special Master.  (ECF No. 716 at PageID 15984–85.)  Plaintiff therefore "prays this Court will order the relief in ECF 682" "on behalf of ECIMOS" and "modify its order to include the stating of the fact that ECIMOS retained its surrogate . . . to review the subsequent replacement versions beyond DSA version 1.0.0.3 and to review the Second Audit Report."  (<u>Id.</u> at PageID 15985.)

The Court-appointed Special Master in this matter was ordered to file regular status reports on Defendant's compliance with Court-ordered efforts to develop a non-infringing runtest system.  (ECF No. 398 at PageID 11046.)  Plaintiff and Defendant were to file any objections with the Court within fourteen days of the filing of a status report.  (<u>Id.</u>)  Plaintiff's letter was a procedurally improper objection.  (<u>Id.</u>)  Plaintiff's letter also raises no concerns about its intellectual property or the findings of the Special Master, but rather accuses Defendant of "tortious behavior" unrelated to its runtest system and raises concerns about Plaintiff's liability for "personal electrical shock injury claim[s]" arising from manual Hipot testing.  (ECF No. 716-1 at PageID 15988–89.)

Defendant's Motion is therefore **DENIED**.

   e.  *PLAINTIFF'S MOTION TO ISSUE A SUBPOENA TO LOGICAL SYSTEMS, INCORPORATED ("LSI")*

Plaintiff argues that Defendant is required to remove ECIMOS IPCS copyrighted schema and hardware drawings from its Monterrey, Mexico production plant "and any other . . . manufacturing facility." (ECF No. 716 at PageID 15985–86.)  Plaintiff claims that it

has "identified Logical Systems, Incorporated" as a "tenant" of Plaintiff's property "on behalf

of Carrier." (Id. at PageID 15986.)  Plaintiff alleges that there is a "possibility of improper

and unlawful copying, and thus further infringing activities." (Id.)

LSI has previously represented in filings with the Court that it "remov[ed] all known

copies of materials received from Carrier and generated by LSI related to a proposed runtest

execution system that LSI considered developing for Carrier Corporation's Collierville[,] TN

manufacturing plant." (ECF No. 692-2 at PageID 15472.)  Plaintiff has previously requested

the same relief requested here and submitted an identical subpoena to the Court, and the Court

previously held that LSI's statement "provides ECIMOS with relief equivalent to the relief a

subpoena would provide." (ECF No. 698 at PageID 15483; see also ECF No. 682-2.)

"Courts are under no obligation, and routinely decline, to consider restatements of prior

arguments." Union Home Mortg. Corp., 2022 WL 5174149 at *2.

Defendant's motion is therefore **DENIED**.

f. *DEFENDANT'S MOTION FOR FEES AND RESTRICTIONS ON FURTHER FILINGS BY PLAINTIFF*

Defendant argues that Plaintiff "[has] no respect for this Court's authority" because of

its "baseless filings" over the last two years. (ECF No. 719 at PageID 16038.)  Defendant

also points to a "larger pattern of bad-faith behavior" on the part of Plaintiff, including a

"defamatory public relations campaign." (Id. at PageID 16039.)  Defendant therefore moves

the Court to use its inherent power to sanction Plaintiff based on the instant "frivolous" filing.

(Id.)  Defendant argues that the Court "should also order that ECIMOS cannot file any

additional motions without prior judicial approval and that Carrier will not be required to

respond to any future filings unless the Court requests a response." (Id. at PageID 16039–40.)

8

A court has the "ever present" authority to impose sanctions on a party pursuant to its inherent powers. Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater, 465 F.3d 642, 645 (6th Cir. 2006). A court may do so when a party litigates "in bad faith, vexatiously, wantonly, or for oppressive reasons." First Bank of Marietta v. Hartford Underwriters Ins. Co., 307 F.3d 501, 512 (6th Cir. 2002) (citing Big Yank Corp. v. Liberty Mut. Fire Ins. Co., 125 F.3d 308, 313 (6th Cir. 1997)). "In order to award attorney fees under this bad faith exception, a district court must find that the claims advanced were meritless, that counsel knew or should have known this, and that the motive for filing the suit was for an improper purpose such as harassment." Id. (citing Big Yank, 125 F.3d at 313). A showing of bad faith requires a showing that a party is making "improper use of the courts." BDT Prod., Inc. v. Lexmark Int'l, Inc., 602 F.3d 742, 753 (6th Cir. 2010) (citing First Bank of Marietta, 307 F.3d at 531 (Gilman, J., concurring in part and dissenting in part)). The Court finds that the conduct of Plaintiff does not rise to that level in the instant motion, and the Court therefore declines to sanction Plaintiff pursuant to its inherent powers.

Injunctive remedies barring additional filings may be appropriate when a party's motions in a case are "frivolous, harassing, or duplicative of prior filings." Mikkilineni v. Penn Nat. Mut. Cas. Ins. Co., 271 F. Supp. 2d 142, 148 (D.D.C. 2003). The Sixth Circuit has called such remedies "the proper method for handling complaints of prolific litigators," and clarified that "the procedure does not violate the [F]irst [A]mendment." Filipas v. Lemons, 835 F.2d 1145, 1146 (6th Cir. 1987). "The court should look to both the number and content of the filings to determine whether they are frivolous or harassing." Mikkilineni, 271 F. Supp. 2d at 148 (citing In re Powell, 851 F.2d 427, 431 (D.C. Cir. 1988)). Plaintiff has raised few new arguments in the instant motion, and the majority of its claims are duplicative, with some

having been raised several times.  (See, e.g., ECF No. 397 at PageID 11041.)  The remainder are frivolous.  (See, e.g., ECF No. 716 at PageID 15980.)    Plaintiff has therefore displayed a pattern of filing frivolous and duplicative motions in this case.  The Court finds it appropriate to enter an injunctive order limiting Plaintiff's ability to file motions in the instant matter, saving Defendant the expense of repeatedly responding to duplicative motions while preserving Plaintiff's access to the courts.  See Mikkilineni, 271 F. Supp. 2d at 148.

Defendant's motion for a restriction on further filings by Plaintiff is hereby **GRANTED**. Before filing any new motions in this case, Plaintiff must seek out and obtain approval from this Court. Plaintiff may do so by filing a motion captioned "Application Pursuant to Court Order Seeking Leave to File" along with the proposed motion.  The motion must also include certification that the claims therein are new claims and are not filed in bad faith.

### III.    CONCLUSION

Plaintiff's multiple motions are **DENIED**.  Plaintiff is hereby **ORDERED** to request leave with the Court before filing further motions in this matter, in accordance with the instructions above.

**SO ORDERED**, this 9th day of November, 2022.

/s/ Jon P. McCalla
JON P. McCALLA
UNITED STATES DISTRICT JUDGE